## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL WILLIAMS,              :
      Plaintiff,          :
                    :
    v.                  :       **CIVIL ACTION NO. 24-CV-5860**
                    :
THE GEO GROUP, *et al.*,     :
      Defendants.     :

### MEMORANDUM

**BEETLESTONE, C.J.**                           **AUGUST 11 ,2025**

*Pro se* Plaintiff Daniel Williams asserts constitutional claims pursuant to 42 U.S.C. § 1983 in connection with his confinement while housed as a pretrial detainee at the Delaware County's George W. Hill Correctional Facility. Williams also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Williams leave to proceed *in forma pauperis* and dismiss his Complaint in part. Williams will have the option to either proceed with the claims that pass statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B) or file an amended complaint.

## I.    FACTUAL ALLEGATIONS[1]

Williams names the following fifteen Defendants in his Complaint: the GEO Group[2],

---

[1] The facts are taken from Williams's Complaint. (*See* ECF No. 1.) Williams initially filed his Complaint in the United States District Court for the Western District of Pennsylvania, which transferred the case to this Court pursuant to 28 U.S.C § 1404(a). (*See* ECF Nos. 1, 2, 3.) The Court adopts the pagination supplied by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary.

[2] The GEO Group formerly operated the George W. Hill Correctional Facility. In April of 2022, Delaware County assumed full operational control of GWHCF from the GEO Group. *See* Delaware County Officially Assumes Control of George W. Hill Correctional Facility (April 6, 2022),

CO Thomas, Sergeant Richburg, Wellpath, Sergeant S. Brown, Delaware County Prison,[3] Dana

Keith,  Megan Gilbert (a Wellpath Psychiatrist), the Warden of the George W. Hill Correctional

Facility, Sergeant Jones, Lieutenant Moody, Chief Leach, CO Suvoor, CO Garr, and CO Bacon.[4]

(Compl. at 2-7, 10.)  He asserts an assortment of constitutional claims based on his stay at the

George W. Hill Correctional Facility from October 2019, through September 2022.  (*Id*. at 4, 8.)[5]

In his Complaint, Williams alleges that beginning in the Fall of 2019, Thomas would

order Williams to perform sexual acts on him.  (*Id*. at 12-16.)  Williams specifically states that

Thomas used "coercive procedures and tactics . . . to get sex . . . [a]nd it worked."  (*Id*. at 13.)

Williams also states that "[s]ometimes for sexual favors, Thomas would bring in platters (outside

food) and/or alcoholic beverages" or would turn "a blind eye" to prison violations.  (*Id*. at 12,

---

https://www.delcopa.gov/publicrelations/releases/2022/delcoofficiallyassumescontrolofgeorgew hillcf.html (last accessed August 11, 2025).

[3] Williams refers to both the Delaware County Prison and the George W. Hill Correctional Facility.  The Court understands these to be references to the same county prison.

[4] Williams asserts claims against all Defendants in both their individual and official capacities.  Claims against municipal officials named in their official capacity are indistinguishable from claims against the municipality that employs them.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id*.  Although Williams does not separately name Delaware County as a Defendant, he names Wellpath and GEO Group.  Thus the Court construes all official capacity claims asserted against the individually named Defendants as a municipal liability or *Monell* claim asserted against Wellpath and the GEO Group.  For the reasons stated below, Williams has not alleged a plausible municipal liability claim against any Defendant.

[5] Williams's public criminal docket reflects that he was sentenced on September 1, 2022.  *See Commonwealth v. Williams*, CP-23-CR-0005530-2019 (C.P. Del.).  Accordingly, the events described in Williams's Complaint took place when he was a pretrial detainee.  See *Fuentes v. Wagner*, 206 F.3d 335, 341 (3d Cir. 2000) (noting that a "convicted inmate awaiting sentencing" is a pretrial detainee), *abrogated in part on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015).

13.)  When Williams was moved to a different cell, from October 2020 until December 2021, he was "held captive" in this new cell as a result of being "capitulated" by Thomas's efforts to obtain "sexual favors."  (*Id*. at 14.)  Williams states that one time in September 2021, Thomas became "enraged" when Williams refused his sexual advances.  (*Id*.)  The next day, Thomas issued a misconduct report to Williams for possession of contraband, which caused Williams to be sent to the restricted housing unit ("RHU").  (*Id*.)  The misconduct report was eventually dismissed.  (*Id*.)  Williams further alleges that in late 2021, when he was "locked in cell 204," he told Thomas that he was going to "spill the beans (be a whistleblower, a rat, a snitch) and let everyone know about the sexual relationship" if Thomas did not give Williams "more exclusive stuff," such as "cigarettes, suboxone, marijuana, K-2, phone, etc."  (*Id*. at 15-16.)  In response, a "livid" Thomas threatened Williams.  (*Id*. at 16.)  Williams states that he was scared to report the incidents with Thomas while he was housed at the George W. Hill Correctional Facility.  (*Id*.)  Once he was transferred out of the facility, he reported the incidents to SCI Camp Hill and SCI Smithfield.  (*Id*. at 16, 25.)

Williams also describes two assaults by prison officials in his Complaint.  (*Id*. at 17-18.)  The first occurred in December of 2021 when Williams was escorted in handcuffs to the Special Management Unit ("SMU").  (*Id*. at 17.)  Williams states that he was "dragged by the shirt" into a cell by Sergeant Richburg and then "savagely, viciously, and brutally beaten by Sergeants Richburg and S. Brown."  (*Id*.)  Richburg allegedly "smushed" Williams's face to the floor and put his knee into Williams's back, while Brown "sadistically punch[ed] and kick[ed]" Williams until he could "no longer move."  (*Id*.)  As a result of the incident, Williams felt "excruciating pain" in his back, knees, elbows, and neck.  (*Id*.)  He states that medical services and his grievances were denied.  (*Id*.)  He further alleges that "Sergeant Jones was notified of the assault

3

the very next day," but that [t]here was still no results." (*Id.*)  Williams alleges that he was

assaulted a second time by Richburg "under direction of Megan Gilbert" sometime between July

21, 2022 and July 24, 2022. (*Id*. at 18.)  The assault allegedly took place in one of the

examination rooms "at Medical" and caused an exacerbation of his knee injury. (*Id.*)

Williams also asserts in his Complaint that he did not have adequate access to the

prison's law library.  He alleges that from March 2020 until sometime in 2021, prison law

librarian Dana Keith closed the law library "due to Covid restrictions." (*Id.*)  During this time,

inmates could not request legal services unless they were able to "catch the law librarian . . . who

[would] creep[] on the block for 5 minutes during a time when everyone [was] asleep." (*Id*. at

19.)  Williams states that due to the law library closure, he missed a "possibility" that he "could

have found some information that could have helped him beat his case," either at trial or at the

postconviction stage. (*Id*. at 18.)  Instead, Williams had no ability to research and no law books

available to him. (*Id*. at 19.)  Once he was able to get into the law library sometime in late 2021

or 2022, he was only permitted one hour a week, which was "not sufficient time for any case, let

alone a murder case." (*Id*. at 18.)

Williams also asserts that the GEO Group failed to protect him from inmate assaults. (*Id*.

at 19.)  He states that he was "coerced by two different inmates to have sex" and that on January

21, 2022, he was stabbed and beaten "by a trilogy of inmates known for violence and extortion to

staff." (*Id*.)  Defendant Suvoor was allegedly "notified" about the January 21 assault. (*Id*.)

Williams also alleges that the GEO Group, Wellpath, and unnamed prison officials failed to

provide him "medically assisted treatment" for his "known opioid addiction." (*Id*. at 19-20.)

When he came to the George W. Hill Correctional Facility, Wellpath and the GEO Group were

"aware that [he] needed help" because the urinalysis upon his entry confirmed opioid use. (*Id*. at

19.)  However, the prison did not offer Williams Medication-Assisted Treatment ("MAT") such as Sublocade or Suboxone, despite the opioid epidemic at that time.  (*Id*.)  As a result, Williams would be "barred for a lifetime of" of MAT programs.  (*Id*. at 20.)  In addition, there was allegedly "no drug program on Unit 10," where he was placed when he arrived and thus "no help" given to him for his opioid addiction.  (*Id*.)

Williams also asserts that prison officials "upon the orders of Megan Gilbert of Wellpath" kept him in the SMU for three months "for no reason other than arbitrary punishment, torment, and torture."  (*Id*. at 21.)  He alleges that he received no misconduct to warrant his placement there but that it was done pursuant to a "custom" of the prison to "send to the SMU" certain "maximum custody inmates" when they "get sentenced.  (*Id*.)  Williams also asserts that while he was in the SMU, he was denied mail service.  (*Id*. at 21-22.)  He states that the prison switched to a "digital mail system" on a tablet in June of 2022 but that SMU units like himself were not permitted to have a tablet.  (*Id*. at 21.)  After Williams complained to Defendants Bacon and Leach about being denied mail service, he was told by Bacon that "'SMU inmates [would] have their mail printed out and brought to them,'" however this allegedly never occurred for Williams.  (*Id*.)  Williams states that from June 2022 through September 2022, he did not receive mail, either physically or through the tablet.  (*Id*.)  During this time, he had "limited contact [with] family members."  (*Id*.)  He also claims he was denied a visit with his attorney on one occasion in July of 2022.  (*Id.*)

In his Complaint, Williams also briefly complains about other conditions of his confinement when the GEO Group ran the facility, such as that he was only offered Islamic services three times, was "locked in a cell 24 hours a day 5 days a week" for two years, endured "black mold in the shower" on his unit, was not provided workout equipment, and was deprived

of showers and electricity for "months at a time." (*Id.* at 20-21.)  Williams states that he was provided a radio during this time but was not provided batteries for it. (*Id.* at 20.)

Finally, Williams asserts that Gilbert "coerced" him to share "false information" with a prison psychiatrist, which was allegedly "used at the murder trial" and resulted in Williams's "demise." (*Id.* at 22.)  Gilbert also allegedly placed Williams on suicide watch multiple times, despite his claims of not being suicidal at that time. (*Id.*)  Williams states that due to prison conditions, he attempted suicide once in August 2022, and that no prison official "helped or cared." (*Id.*)  Garr was allegedly on duty at the time. (*Id.*)  Based on these allegations, Williams asserts constitutional claims pursuant to § 1983 and seeks money damages. (*Id.* at 11.)

## II.    STANDARD OF REVIEW

The Court grants Williams leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[6]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Williams's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th

---

[6] Because Williams is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Williams is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

The Court understands Williams to assert various constitutional claims in connection with his pretrial detention at the George W. Hill Correctional Facility.[7]  Williams asserts constitutional claims pursuant to § 1983, the statute enabling a plaintiff to raise claims for violations of the federal constitution.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A.    Claims against the Delaware County Prison

Williams names the Delaware County Prison as a Defendant.  However, a jail or correctional facility is not a "person" under § 1983.  *See Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v.*

---

[7] In his Complaint, Williams states that his Eighth Amendment rights were violated. (Compl. at 4.)  However, because Williams was a pretrial detainee at the time of the events in question, the Fourteenth Amendment, rather than the Eighth Amendment, governs his conditions-of-confinement claims.  *See Hubbard v. Taylor*, 399 F.3d 150, 165-66 (3d Cir. 2005).

*Chester Cnty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010).  Accordingly, his claims against the Delaware County Prison must be dismissed because it is not a legal entity susceptible to suit.  *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) (*per curiam*) (affirming dismissal of claims against county prison because even though "[a] local governmental agency may be a 'person' for purposes of § 1983 liability, [the county prison] is not a person capable of being sued within the meaning of § 1983" (internal citations omitted)).

### B.    Claims against Thomas

Williams asserts constitutional claims against Thomas based on allegations that he was coerced into engaging in sexual relations with Thomas over the course of several years and that on one occasion, when Williams refused, Thomas retaliated against him by writing him a misconduct report and sending him to the RHU.  The Court understands Williams to assert Fourteenth Amendment sexual abuse claims and First Amendment retaliation claims against Thomas.

Sexual abuse and harassment can violate an inmate's rights.  *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018); *E. D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019).  A claim for sexual abuse is analyzed in the same manner as an excessive force claim.  *Ricks*, 891 F.3d at 473-74. Because Williams was a pretrial detainee during the relevant event, the Due Process Clause of the Fourteenth Amendment governs his sexual abuse claims.  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation and citation omitted); *Sharkey*, 928 F.3d at 307 ("E.D.'s allegations of Sharkey's sexual assault, which could not have served a legitimate governmental objective and thereby constituted impermissible punishment, set forth a

plausible violation of her right to personal bodily integrity protected by the Due Process Clause of the Fourteenth Amendment."). To allege a sexual abuse claim, a detainee must allege facts plausibly establishing both objective and subjective components. *Ricks*, 891 F.3d at 475 (stating that the misconduct "must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind"). "To determine whether challenged conditions of confinement amount to punishment, this Court determines whether a condition of confinement is reasonably related to a legitimate governmental objective." *Sharkey*, 928 F.3d at 307.

To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). A prisoner's filing of a grievance or expressing an intent to file a grievance constitutes constitutionally protected conduct. *Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at *2 (3d Cir. Aug. 29, 2023) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Williams alleges that Thomas, a "man of authority," used "coercive procedures and tactics" to get Williams to engage in sexual relations with him, and that this went on for several

years.  (Compl. at 12-16.)  Williams has alleged facts sufficient to plausibly support both the subjective and objective prongs of a sexual abuse claim against Thomas.  Williams also alleges that when he refused Thomas's sexual advances and threatened to "snitch" on him, Thomas became "enraged" or "livid," threatened Williams, and wrote Williams up for misconduct, which caused him to be sent to the RHU.  Based on these allegations, Williams has stated a plausible First Amendment retaliation claim against Thomas.  Williams's claims against Thomas pass statutory screening and will be served.

### C.    Claims against Richburg and S. Brown

Williams asserts excessive force claims against Defendants Richburg and S. Brown based on allegations that, in December 2021, he was "brutally beaten" by these Defendants, and that in July of 2022, he was "assaulted" by Richburg.  To state a due process violation based on excessive force, a pretrial detainee must allege plausibly "that the force purposely or knowingly used against him was objectively unreasonable."  *Kingsley*, 576 U.S. at 396-97.  "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used:  the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Id*. at 397.  Whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'"  *Jacobs v. Cumberland Cnty*., 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Williams alleges that while he was handcuffed and being escorted to the SMU, Richburg "smushed" Williams's face to the floor and put his knee into Williams's back while Brown

10

punched and kicked Williams until Williams could no longer move.  (Compl. at 17.)  Williams alleges plausible excessive force claims against Richburg and Brown based on the December 2021 incident.  This claim will be served.  Williams has not, however, stated sufficient facts regarding the incident that occurred in July of 2022.  He merely alleges in conclusory fashion that Richburg "assaulted" him in a medical examination room at the direction of Megan Gilbert, an alleged prison psychiatrist.  (Compl. at 5, 18.)  He provides no other details about the circumstances that led to his encounter with Richburg, what actions specifically Richburg took, and how Gilbert was involved.  The claim based on the July 2022 incident in the medical examination room is therefore underdeveloped and will be dismissed without prejudice.

### D.    Claims against Jones, Suvoor, Moody, and Garr (Lack of Personal Involvement)

As noted above, to state a plausible § 1983 claim, Williams must allege how each individual defendant was specifically involved in the alleged constitutional harms.  *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Williams has not alleged sufficient facts regarding the alleged involvement of Defendants Jones, Suvoor, Moody, or Garr.

The only allegations in the Complaint relating to Jones, Suvoor, and Moody are that they were notified about an incident after it occurred.  With respect to Jones, Williams merely alleges that Jones was "notified the very next day" after the alleged assault by Richburg and Brown in December of 2021.  (Compl. at 17.)  No other facts are alleged about Jones's involvement in the alleged assault or in any other incident described in the Complaint.  With respect to Suvoor,

Williams alleges only that Suvoor was "notified" after Williams was assaulted and stabbed by three inmates on July 21, 2022.  (*Id.* at 19.)  No other facts are alleged about Suvoor's involvement in the alleged assault or in any other incident described in the Complaint.  With respect to Moody, Williams states that Moody was "made aware of the theft of property multiple times," and references an undisclosed "UCC financing statement/UCC contract trust account." (*Id.* at 23.)  Williams alleges no other facts about an alleged theft of his property and no other facts about Moody's involvement in any of the other events described in the Complaint.  Simply being notified about an alleged constitutional violation after it happened is not sufficient to establish a causal link between the constitutional harm and the Defendants' actions to establish personal involvement.  *See Williams v. Wetzel*, No. 23-1235, 2025 WL 908406, at *2 (W.D. Pa. Mar. 26, 2025) ("[A]fter-the-fact notice is not sufficient to establish personal involvement."); *see also Ricker v. Weston*, 27 F. App'x 113, 119-20 (3d Cir. 2002) (concluding that a decision not to discipline does not establish personal involvement "given that all of the injuries occurred before the decision" and "[t]here is simply no causal link between those injuries and what [the defendants] did or did not do").

Finally, with respect to Garr, Williams alleges only that Garr was on duty when Williams attempted suicide.  (Compl. at 22.)  Williams asserts no facts about whether Garr was even aware of the suicide or his involvement in the alleged failure to provide aid after it occurred. Moreover, there are no facts about Garr's involvement in any other incident described in the Complaint.  Williams has failed to establish the necessary personal involvement of  Jones, Suvoor, Moody, and Garr to state a plausible claim.  Accordingly, the § 1983 claims asserted against these Defendants will be dismissed without prejudice.

### E.    Claims against Dana Keith

The Court understands Williams to assert an access-to-courts claim against prison law librarian Dana Keith based on allegations that Keith shut the law library down and limited Williams's ability to make requests for legal documents.  The inability of pretrial detainees to access legal resources such as the law library is analyzed as an access-to-courts claim under the First and Fourteenth Amendments.  *Prater v. City of Philadelphia*, 542 F. App'x 135, 137 (3d Cir. 2013) (*per curiam*); *see also Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) ("Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts.").  To state a claim for denial of access to courts, a plaintiff must show that he "suffered 'an actual injury' because of his alleged inability to access the prison library."  *Prater*, 542 F. App'x at 137 (quoting *Lewis v. Casey*, 518 U.S. 343, 349 (1996)).  A detainee states an actual injury by alleging "that a 'nonfrivolous' and 'arguable' claim was lost because of the denial of access to the courts."  *Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010) (*per curiam*); *see also Sanders v. Rose*, 576 F. App'x 91, 94 (3d Cir. 2014) (*per curiam*) ("[T]o sufficiently plead an access-to-courts claim . . . a non-prisoner must plead that 'official acts . . . may allegedly have caused the loss . . . of a meritorious case.'" (quoting *Christopher v. Harbury*, 536 U.S. 403, 416 (2002)).

Williams fails to state a plausible access-to-courts claim because he does not allege an actual injury.  He states only that had he been provided law library access, "there is a possibility that [he] could have found some information that could have helped him beat his case."  (Compl. at 18.)  Such vague and generalized allegations are too speculative and do not support a plausible inference that Williams lost a nonfrivolous or arguable claim.  *See Prater*, 542 F. App'x at 137 (affirming denial of access-to-courts claim where the pretrial detainee had "not offered any other explanation of how his inability to access the library affected his criminal proceedings"); *Diaz v.*

*Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of access-to-courts claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In any event, Williams was represented by an attorney during the conviction and sentencing phases of his criminal proceeding. *See Williams*, CP-23-CR-0005530-2019. Williams cannot state a plausible claim for denial of access to courts if he was represented by counsel during his criminal case. *Prater*, 542 F. App'x at 137 n.4; *see also Diaz*, 532 F. App'x at 63; *Roman v. Union Cty. Jail*, No. 16-1049, 2017 WL 498715, at *5 (D.N.J. Feb. 7, 2017) (denying access-to-courts claim for pretrial detainee to the extent the plaintiff was represented by counsel in his criminal proceedings); *Hurdle v. Dantos*, No. 20-5595, 2020 WL 6747293, at *6 (E.D. Pa. Nov. 17, 2020) (denying claim for access to legal research in part because the pretrial detainee was represented by counsel). Accordingly, Williams's access-to-court claims asserted against Keith will be dismissed with prejudice.

### F.    Claims based on Denial of Access to Mail

Williams also asserts a First Amendment claim against Leach and Bacon based on allegations that he was denied access to his personal mail for three months in 2022 when the prison switched to a digital mail system and Williams was not provided a tablet. Prisoners have protected First Amendment interests in both sending and receiving mail. *See Thornburgh v. Abbott*, 490 U.S. 401 (1989); *see also Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) ("[P]risoners, by virtue of their incarceration, do not forfeit their First Amendment right to use of the mails." (internal quotations omitted)). However, this right to receive and send mail "can be restricted for legitimate penological interests." *Nixon v. Sec'y Pennsylvania Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) (*per curiam*). Courts have found that mere isolated incidents of interference without evidence of an improper motive are insufficient to establish a First

14

Amendment violation.  *See, e.g.*, *id*; *Gibson v. Erickson*, 830 F. App'x 372, 373 (3d Cir. 2020) (*per curiam*).

Williams fails to allege a plausible First Amendment claim.  He alleges generally that he was "denied mail service" from June 2022 to September 2022 but he does not allege any specific facts about what mail he specifically did not receive and when.  (Compl. at 21.)  In addition, Williams does not allege the personal involvement of any individual defendant in interfering with his access to his mail.  *See Taylor v. Oney*, 196 F. App'x. 126, 128 (3d Cir. 2006) (noting that the plaintiff must show the personal involvement of individual defendants to establish a First Amendment claim based on the interference of mail).  Although Williams states that he complained to Bacon and Leach about not having access to a tablet, Bacon advised him that his mail would be printed and brought to him.[8]  There are no allegations in the Complaint connecting Bacon or Leach to any alleged interference with Williams receiving his mail.  The First Amendment claim will be dismissed without prejudice.

### G.    Due Process Claims against Megan Gilbert and the Warden

The Court understands Williams to assert a Fourteenth Amendment due process claim against Gilbert, a Wellpath psychiatrist, and the Warden of the prison based on allegations that they ordered Williams to be kept in the SMU for two months from July 2022 until September 2022, "for no reason other than arbitrary punishment and torture."  (Compl. at 22.)  Williams alleges that he did not receive any discipline or warning prior to the placement but rather that his transfer was pursuant to a prison "custom" to send "maximum custody inmates" to the SMU when they get sentenced.  (*Id*.)  Williams was sentenced in September of 2022.  Based on the

---

[8] It is also unclear whether Williams intends to assert claims against Bacon at all since a "mediation statement" he included with his Complaint states that Bacon is "not really a defendant but named in the Complaint."  (ECF No. 1-1.)

limited facts alleged, the Court understands Williams to allege that he was placed in segregated housing for administrative and not disciplinary reasons. The standards Courts utilize to consider due process claims by pretrial detainees differ depending on the type of restrictive housing alleged.

Pretrial detainees are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Generally, prison officials' "restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) 'there is a showing of express intent to punish on the part of [those] [ ] officials'; (2) 'the restriction or condition is not rationally related to a legitimate non-punitive government purpose,' i.e., 'if it is arbitrary or purposeless'; or (3) 'the restriction is excessive in light of that purpose.'" *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 67-68 (3d Cir. 2007) (alterations in original)). "Punishment" in this context refers to "punishment of a pretrial detainee for his alleged criminal conduct, committed *prior* to his detention, for which he has not yet been committed." *Id.* (emphasis in original). It does not refer to punishment of a pretrial detainee "for his in-facility conduct." *Id.* at 505. In other words, "prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)).

Generally, prisoners confined for disciplinary reasons are afforded greater process those confined for administrative reasons, such as Williams. *See Stevenson*, 495 F.3d at 70. This is because "maintaining internal security and order in jails and prisons are 'legitimate governmental objectives'" that may justify placement of a detainee in administrative segregation, and "courts

must give prison officials considerable discretion to manage internal security in their

institutions." *Steele*, 855 F.3d at 505.  In other words, if officials can articulate a legitimate

managerial concern for placement of the detainee in restricted housing, a substantive due process

claim is foreclosed.  *Stevenson*, 495 F.3d at 69 ("Although the substantive and procedural due

process evaluations are distinct, a showing by the prison officials that a restrictive housing

assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or

purposeless, will typically foreclose the substantive due process inquiry").  When a detainee's

placement is for administrative purposes, "the minimal procedures outlined in *Hewitt v. Helms*,

459 U.S. 539 (1983) are all that is required."  *Lewis v. Williams*, No. 05-013, 2011 WL 2441377,

at *17 (D. Del. June 13, 2011) (citing *Stevenson*, 495 F.3d at 70).  *Hewitt* requires that, within a

reasonable time, a detainee be explained the reason for the administrative placement as well be

be given an opportunity to respond.  *Steele*, 855 F.3d at 507; *Stevenson*, 495 F.3d at 70 (citations

omitted).  "[T]he opportunity to respond can be satisfied by written grievances."  *Kanu*, 739 F.

App'x at 117.

Based on the minimal facts alleged, Williams's due process claims are undeveloped as

pled.  Williams has not alleged sufficient facts to give rise to an inference that his placement in

segregation amounted to improper punishment or that it was accomplished without appropriate

attendant notice and process.  Williams does not allege whether he was explained the reason for

his administrative placement in the SMU or whether he simply assumed it was timed with his

criminal sentencing.  Williams also does not allege whether he was provided an opportunity to

respond to his placement in the SMU or whether he filed any grievances about that placement.

Williams's due process claims will therefore be dismissed without prejudice.[9]

### H.    Denial of Medical Treatment Claims against Wellpath and the GEO Group

Williams also asserts claims against Wellpath and the GEO Group based on allegations that he was denied Medication-Assisted Treatment ("MAT") for opioid addiction when he first arrived at the George W. Hill Correctional Facility.  To state a claim based on the failure to provide medical treatment under the Fourteenth Amendment, a plaintiff must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety."  *Id*. at 837.  Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a

---

[9] To the extent that Williams attempts to assert other claims against Gilbert based on allegations that she ordered him on suicide watch even though he was not suicidal, or that she "coerced" him to provide "false information" to the Delaware County Court of Common Pleas (*see* Compl. at 22), such claims are also dismissed without prejudice.  Williams does not provide sufficient factual details to state a plausible constitutional claim.

In addition, to the extent that Williams attempts to assert a claim based on allegations that Gilbert violated his rights under HIPAA by sharing personal medical information with staff (*see id.*), such a claim will also be dismissed.  There is no federal private right of action under HIPAA.  *See Byrne v. Berks Cnty. Jail*, No. 24-1193, 2024 WL 2794446, at *1 (3d Cir. May 31, 2024) (citing *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021); *Payne*, 998 F.3d at 660 (noting that "[e]very circuit court to consider whether HIPAA created a private right to sue has found that it does not" and citing cases from the Second, Fifth, Seventh, Eighth, Ninth, and Tenth Circuits)); *Johnson v. WPIC*, 782 F. App'x 169, 171 (3d Cir. 2019) (*per curiam*) (citing *Acara v. Banks*, 470 F.3d 569 (5th Cir. 2006)).

doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347

(3d Cir. 1987) (internal quotations omitted).

To plead a basis for municipal liability against a city under § 1983, a plaintiff must allege

that the city's policy or custom caused the violation of his constitutional rights. *See Monell v.*

*Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Similarly, to plead a § 1983 claim

against a prison medical provider like Wellpath, a plaintiff must allege the provider had "a

relevant . . . policy or custom, and that the policy caused the constitutional violation [he]

allege[s]." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing

*Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *Sims*

*v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (*per curiam*) (stating that "a

private health company providing services to inmates 'cannot be held responsible for the acts of

its employees under a theory of respondeat superior or vicarious liability'"); *see also Lomax v.*

*City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because

[defendant] is a private company contracted by a prison to provide health care for inmates, . . . it

can only be held liable for constitutional violations if it has a custom or policy exhibiting

deliberate indifference to a prisoner's serious medical needs." (citations and quotations

omitted)).[10]

"To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that

custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). It is not

---

[10] "'Policy is made when a decisionmaker possess[ing] final authority to establish
municipal policy with respect to the action issues an official proclamation, policy, or edict.'"
*Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of
Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven
by showing that a given course of conduct, although not specifically endorsed or authorized by
law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v.
Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

enough, however, to allege the existence of a policy or a custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id*. (quoting *Bielevicz*, 915 F.2d at 850).

Williams does not allege a Wellpath or GEO Group policy or custom that was the cause of his being denied Medication-Assisted Treatment for his opioid addiction.  Instead, he states that Wellpath and the GEO Group knew about his opioid addiction but "did nothing to help." (Compl. at 20.)  This is not sufficient to state a plausible *Monell* claim.[11]  In addition, Williams does not allege that any individually named Defendant was involved in the denial of Medication-Assisted Treatment or that any Defendant was otherwise deliberately indifferent to his opioid addiction.  Accordingly, Williams's Fourteenth Amendment claims based on the denial of medical treatment will be dismissed without prejudice.[12]

---

[11] While the claim against Wellpath will be dismissed without prejudice, the Court notes that any liability against Wellpath in this Court is uncertain in light Wellpath's discharge from liability by the United States Bankruptcy Court for the Southern District of Texas, Houston Division, for claims that arose prior to November 11, 2024.  *See In Re Wellpath Holdings, Inc*., No. 24-90533 (Bankr. S.D. Tx.) (Bankr. Doc. Nos. 2596, 2679, 2680) ); *see also* 11 U.S.C. § 524(a)(2) ("A discharge in a [Chapter 11 bankruptcy] case . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.").

Moreover, claims against Wellpath employees such as Megan Gilbert, may also be affected by Wellpath's bankruptcy.  In particular, absent any information that Williams has opted out of the Third-Party Releases or otherwise taken action in the Bankruptcy Court, the claims against Megan Gilbert or any other Wellpath employee may be barred by the injunction contained in the confirmed Chapter 11 Plan.  *See* Ch. 11 Plan, Art. IX, *In re Wellpath*, No. 24-90533, ECF No. 2596 at 128-136; *see also* 11 U.S.C. §§ 524(a); 1123(b)(6); 1141(a), (d).

[12] Williams also alleges that Wellpath and the GEO Group failed to protect him from inmate assaults and inmate sexual advances.  However, Williams has not alleged that the inmate violence to which he was subjected was caused by a Wellpath or GEO Group policy or custom.

## I.    Conditions of Confinement Claims

Finally, Williams makes passing references in his Complaint to an assortment of

conditions to which he was exposed while housed at the George W. Hill Correctional Facility.

Specifically, he alleges that he endured black mold in the showers, was not provided workout

equipment, was deprived of showers and electricity for "months at a time," was not provided

batteries, had limited access to Islamic services, was subjected to "beaming light all night" while

in "solitary confinement" at the SMU, and was "locked in a cell 24 hours a day 5, days a week"

for two years.[13]  (Compl. at 20-22.)  To establish a basis for a Fourteenth Amendment violation,

a pretrial detainee must allege that his conditions of confinement amount to punishment.  *Bell*,

441 U.S. at 538; *Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (*per curiam*).  In that

regard, a "particular measure amounts to punishment when there is a showing of express intent to

punish on the part of detention facility officials, when the restriction or condition is not rationally

related to a legitimate non-punitive government purpose, or when the restriction is excessive in

---

Thus, to the extent Williams intended to assert a failure to protect claim against Wellpath or the
GEO Group, he has failed to do so.

[13] The Court notes that some of the conditions of which Williams complains occurred
when prisons undertook various measures to combat the COVID-19 pandemic.  Courts have held
that due to the nature of this pandemic and its resulting security implications for prisons and
jails, denial of exercise opportunities and other such prison activities during those periods of
lockdowns did not constitute punishment so as to support plausible claims.  *See, e.g., Hope v.
Warden York County Prison*, 972 F.3d 310, 327-28 (3d Cir. 2022) (concluding that conditions of
confinement during COVID-19 did not amount to unconstitutional punishment)); *Carredo v.
Hudson Cnty. Corr.*, No. 22-2122, 2022 WL 2358405, at *4 (D.N.J. June 27, 2022) (holding that
failure of prison officials to adhere to  rules and regulations regarding recreation and exercise
during the COVID-19 pandemic failed to state a claim for relief that the conditions of
confinement constituted punishment); *Chapolini v. City of Philadelphia*, No. 22-284, 2022 WL
815444, at *3-4 (E.D. Pa. Mar. 17, 2022) (dismissing on screening pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii) plaintiff's claim that as a result of the prison's COVID-19 response measures,
he was confined to his cell for 23 hours and 40 minutes per day and lost access to law library, in-
person visitation and out of cell exercise because plaintiff failed to allege how long he was
subjected to the challenged conditions) (citing *Hope*).

light of that purpose." *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68), *abrogation on other grounds recognized by Fisher*, 115 F.4th 197; *see also Steele*, 855 F.3d at 504. Only conditions of confinement that "cause inmates to endure such genuine privations and hardship over an extended period of time" violate the Fourteenth Amendment. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (internal quotations omitted).

Williams's claims about the various conditions of his confinement at the George W. Hill Correctional Facility fail as pled because Williams has not tied any named Defendant's specific conduct to the alleged constitutional violations. *See Rode*, 845 F.2d at 1207. The claims also fail because they are vague and factually undeveloped. Williams does not allege any specific facts about the conditions to which he was exposed, including specific timeframes, the duration of the exposure, and how he was harmed. His passing references to these conditions, without more, fail to raise a plausible inference that the conditions were intended as punishment. Accordingly, any claims Williams asserts based on the conditions of his confinement will be dismissed without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Williams leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice. Williams's access-to-courts claim asserted against Dana Keith, his claims against the Delaware County Prison, and any claims based on violations of HIPAA will be dismissed with prejudice. Williams's sexual abuse and retaliation claims asserted against Thomas and his excessive force claims asserted against Richburg and Brown based on the December 2021 incident pass statutory screening. The balance of Williams's claims are dismissed without prejudice. Williams may file an amended complaint in the event he can allege facts to cure the defects the Court has noted

regarding the claims that were dismissed without prejudice.  In the alternative, Williams may proceed with the claims that pass statutory screening, in which case the Court will direct service of the Complaint only on Defendants Thomas, Richburg, and Brown, so that Williams may proceed on his remaining claims.   An appropriate Order follows, which offers additional guidance on options for proceeding.

**BY THE COURT:**

**S/  WENDY BEETLESTONE**

**WENDY BEETLESTONE, C.J.**